1  DURIE TANGRI LLP
   JOSEPH C. GRATZ (SBN 240676)
2  jgratz@durietangri.com
   217 Leidesdorff Street
3  San Francisco, CA  94111
   Telephone:      415-362-6666
4  Facsimile:       415-236-6300

5  Attorney for Plaintiffs
   Automattic Inc. and
6  Oliver Hotham

7

8                IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11 AUTOMATTIC INC. and                  Case No. 3:13-cv-5413-JCS
   OLIVER HOTHAM,
12                                       **PLAINTIFFS' NOTICE OF MOTION AND
                                         MOTION FOR DEFAULT JUDGMENT
13                        Plaintiffs,    AGAINST NICK STEINER**

14       v.                              Date:    June 27, 2014
                                         Time:    10:30 am
15 NICK STEINER,                         Ctrm:    G - 15th Floor
                                         Judge:   Honorable Joseph C. Spero
16                        Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

PAGE

I.    BACKGROUND ....................................................................................................2

    A.    Hotham's Article and Steiner's Fraudulent DMCA Takedown Notice............................2

    B.    Timeline of Complaint, Service, and Default ...................................................4

II.   DEFAULT JUDGMENT........................................................................................4

    A.    Rule 55 ...............................................................................................4

    B.    Liability ..............................................................................................4

    C.    *Eitel* Factors ........................................................................................5

        1.    Possibility of Prejudice to Plaintiffs ........................................................5

        2.    Merits of the Claim and Sufficiency of the Complaint...................................6

        3.    Amount of Money at Stake ...................................................................6

        4.    No Possibility of Disputed Facts .............................................................6

        5.    No Possibility of Excusable Neglect.........................................................6

        6.    Policy Favoring Resolution on the Merits ..................................................7

III.  JURISDICTION ...................................................................................................7

    A.    Subject Matter Jurisdiction ........................................................................7

    B.    Personal Jurisdiction ...............................................................................7

        1.    Steiner Consented to Jurisdiction in California ............................................7

        2.    This Action Arises Out of Steiner's Specific Contacts with California ................8

IV.   DAMAGES ..........................................................................................................9

    A.    Hotham and Automattic Spent Time Dealing with Meritless Takedown Notices.............10

    B.    Hotham and Automattic Suffered Loss of Reputation......................................11

    C.    Automattic Incurred Attorneys' Fees in Pursuing This Litigation ...................11

    D.    Steiner's Actions Chilled Hotham's Speech................................................12

V.    CONCLUSION....................................................................................................13

1

**TABLE OF AUTHORITIES**

2

**PAGE(S)**

3

**Cases**

4

*AT&T Corp. v. Iowa Utilities Bd.*,
   525 U.S. 366 (1999)...............................................................................................12

5

*Bloate v. U.S.*,
6   559 U.S. 196 (2010)...............................................................................................12

7

*Church Bros., LLC v. Garden of Eden Produce*, *LLC*,
   11-CV-04114 EJD, 2012 WL 1155656, *3 (N.D. Cal. Apr. 5, 2012)..........................6

8

*Columbia Pictures Film Prod. Asia Ltd. v. Uth*,
9   2007 WL 36283 (E.D. Cal. Jan. 4, 2007)..................................................................4

10

*Craigslist, Inc. v. Naturemarket, Inc.*,
   694 F. Supp. 2d 1039 (N.D. Cal. 2010)................................................................7, 8

11

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*,
12   482 U.S. 437 (1987)...............................................................................................12

13

*Doe v. Geller*,
   533 F. Supp. 2d 996 (N.D. Cal. 2008)......................................................................9

14

*Dole Food Co., Inc. v. Watts*,
15   303 F.3d 1104 (9th Cir. 2002)..................................................................................8

16

*Eitel v. McCool*,
   782 F.2d 1470 (9th Cir. 1986)..............................................................................5, 6

17

*Family Tree Produce, Inc. v. Bautista*,
18   13-00364-DOC, 2013 WL 6733576, *4 (C.D. Cal. Dec. 13, 2013)............................6

19

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945).................................................................................................8

20

*Lake v. Lake*,
21   817 F.2d 1416 (9th Cir. 1987)..................................................................................8

22

*Lenz v. Universal Music Corp.*,
   07-cv-03783, 2010 WL 702466, at *11 (N.D. Cal. Feb. 25, 2010).....................11, 13

23

*Lenz v. Universal Music Corp.*,
24   2013 WL 271673 (N.D. Cal. Jan. 24, 2013)............................................................13

25

*Nat'l Cable & Telecomm'ns Ass'n, Inc. v. Gulf Power Co.*,
   534 U.S. 327 (2002)...............................................................................................12

26

*PepsiCo v. Cal. Sec. Cans.*,
27   238 F. Supp. 2d 1172 (C.D. Cal. 2002).....................................................................7

28

*Schwarzenegger v. Fred Marin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004)................................................................................8, 9

*SEC v. Ross*,
    504 F.3d 1130 (9th Cir. 2007) ...........................................................................7

*Subafilms, Ltd. v. MGM-Pathe Comm. Co.*,
    24 F.3d 1088 (9th Cir. 1994) ...........................................................................8

*TeleVideo Sys., Inc. v. Heidenthal*,
    826 F.2d 915 (9th Cir. 1987) ...........................................................................4

*Zenger-Miller, Inc. v. Training Team GmbH*,
    757 F. Supp. 1062 (N.D. Cal. 1991) ...............................................................8

**Statutes**

17 U.S.C. § 505 ...............................................................................................12

17 U.S.C. § 512 ........................................................................................... passim

28 U.S.C. § 1331 ...............................................................................................7

28 U.S.C. § 1338 ...............................................................................................7

Cal. C.C. Proc. Code § 410.10 ...........................................................................8

**Rules**

Fed. R. Civ. P. 55 .........................................................................................1, 4

1  TO: THE CLERK OF THE ABOVE-ENTITLED COURT

2      PLEASE TAKE NOTICE that on June 27, 2014 at 10:30am, or as soon thereafter as this matter

3  may be heard, in Courtroom G on the 15th Floor of the above-entitled court of Magistrate Judge Joseph

4  C. Spero located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs, by their attorneys

5  Durie Tangri LLP, will move and hereby move for an order granting Plaintiffs Motion for Default

6  Judgment against Defendant under Fed. R. Civ. P. 55(b)(2).

7      This motion is based on this notice, the Memorandum of Points and Authorities in support of this

8  motion, and the declarations Joseph C. Gratz, Oliver Hotham, and Paul Sieminski filed along with this

9  brief.

10          **MEMORANDUM OF POINTS AND AUTHORITIES**

11      Plaintiffs filed their Complaint on November 21, 2013 alleging that they were damaged as a result

12  of Defendant's misrepresentations, bringing a claim under 17 U.S.C. § 512(f).  The Complaint alleges

13  that the defendant in this case, a representative of the advocacy group "Straight Pride UK," sent a press

14  statement to Plaintiff Oliver Hotham, a journalist.  He later attempted to suppress Hotham's reporting on

15  that press statement through the misuse of copyright law.  Hotham had posted the press statement on his

16  blog, which is hosted through the WordPress.com blog hosting service offered by Plaintiff Automattic

17  Inc. ("WordPress.com").  Defendant sent a takedown notice to WordPress.com pursuant to 17 U.S.C. §

18  512(c), falsely claiming that he had not authorized the publication of the material posted by Hotham.

19  Steiner's knowing material misrepresentations caused harm to Hotham and to WordPress.com.

20      Congress has recognized the virtue of encouraging service providers that provide internet users

21  with ways to communicate over the internet, store information, post content or locate information using

22  the internet.  However, it has also recognized the potential for crippling copyright liability if a service

23  provider were liable for the infringing content that users post or transmit.  Thus, Congress passed the

24  Digital Millennium Copyright Act ("DMCA") which limits liability for service providers on the

25  condition that they remove content which copyright holders claim to be infringing.  *See generally* 17

26  U.S.C. § 512.

27      The DMCA gives a copyright holder the power to cause a service provider, such as

28  WordPress.com, to remove content from its website based solely on an individual's assertion that the site

is hosting infringing content.  *See* 17 U.S.C. § 512(c)(3).  It also addresses the clear potential for abuse of the system.  *See* 17 U.S.C. § 512(f).  The DMCA makes "any person who knowingly misrepresents . . . that material or activity is infringing . . . liable for any damages including costs and attorneys' fees, incurred by the alleged infringer."  *Id.*

Nick Steiner abused the DMCA process in an attempt to silence a journalist critical of Steiner's organization, Straight Pride UK.  Automattic and Oliver Hotham filed this action against Steiner to recover for the damage caused by his misrepresentations for his DMCA takedown notice, which falsely stated that Hotham infringed copyright by reporting on a press release.

## I. BACKGROUND

### A. Hotham's Article and Steiner's Fraudulent DMCA Takedown Notice

Oliver Hotham is a student journalist with a blog hosted on WordPress.com's website.  (Compl. ¶¶ 10, 12.)  In May or June of 2013 Hotham read a blog post on a website called BuzzFeed about an organization called Straight Pride UK.  (Compl. ¶¶ 20-21.)  In July, Hotham wrote to Straight Pride UK, identifying himself as "a student and freelance journalist."  (Compl. ¶ 22.)  He asked if he could send the organization some questions to "find out a bit about who's involved and what you hope to accomplish."  (*Id.*)  He sent Straight Pride UK a set of questions on July 30, 2013.  (Compl. ¶ 24.)  Two days later, Defendant Nick Steiner responded, identifying himself as the "Press Officer" for Straight Pride UK, and attaching a PDF document called "Press Statement – Oliver Hotham.pdf."  (Compl. ¶¶ 25-26.)  The document was on Straight Pride UK letterhead, had the heading "Statement," and was signed by the "Straight Pride Press Team" giving the email address "press@straightpride.co.uk."  (Compl. ¶¶ 27-28; *see id.*, Ex. A.)

In August 2013, Hotham posted an article to his WordPress blog at http://oliverhotham.wordpress.com, which stated:

> There has never been a better time to be gay in this country.  LGBTI people will soon enjoy full marriage equality, public acceptance of homosexuality is at an all time high, and generally a consensus has developed that it's really not that big of a deal what consenting adults do in the privacy of their bedrooms. The debate on Gay Marriage in the House of Commons was marred by a few old reactionaries, true, but generally it's become accepted that full rights for LGBTI people is inevitable and desirable. Thank God.

1

> But some are deeply troubled by this unfaltering march toward common decency, and they call themselves the Straight Pride movement.
>
> Determined to raise awareness of the "heterosexual part of our society", Straight Pride believe that a militant gay lobby has hijacked the debate on sexuality in this country, and encourage their members, among other things, to "come out" as straight, posting on their Facebook page that: "Coming out as Straight or heterosexual in today's politically correct world is an extremely challenging experience. It is often distressing and evokes emotions of fear, relief, pride and embarrassment."
>
> I asked them some questions.

2

3

4

5

6

7

8  (Compl. ¶ 29.)  Hotham's article also included the questions he sent to Straight Pride UK and the answers

9  Straight Pride UK sent back in its "Press Statement."  (Compl. ¶ 30.)

10       Apparently unhappy with Hotham's viewpoint, Nick Steiner sent WordPress.com an email

11  demanding that WordPress remove Hotham's post.  (Compl. ¶ 31.)   The takedown notice accuses

12  Hotham of copyright infringement and demands that WordPress remove the post based on the DMCA

13  safe-harbor provisions in 17 U.S.C. § 512(c) .  (Compl. ¶ 32.)  Specifically, the Steiner said, "[u]ser

14  http://oliverhotham.wordpress.com did not have my permission to reproduce this content, on

15  Wordpress.com or twitter or tweets, no mention of material being published was made in

16  communications" and that "[i]t is of good faith believe that use of the material in the manner complained

17  of here is not authorized by me, the copyright holder, or the law."  (Compl. ¶ 33.)  These representations

18  were knowing falsehoods.  (Compl. ¶ 35.)  Hotham had informed Defendant that he was a journalist, and

19  Steiner drafted and sent the Press Statement with the intent that it be reported upon by Hotham, going so

20  far as to title it, "Press Statement."  (Compl ¶ 34.)

21       Automattic relied on Steiner's misrepresentations and disabled access to the post that Steiner

22  identified.  (Compl. ¶ 36.)

23       Automattic spent significant staff time and resources in reviewing the takedown notice, disabling

24  access to the posts, notifying Hotham of the takedown notice, reviewing Hotham's response, dealing with

25  press inquiries surrounding the takedown and reinstating of the post, and ultimately pursuing this

26  litigation.  (Sieminski Decl. ¶¶ 2-11.)  Similarly, Hotham himself spend substantial time corresponding

27  with Automattic in an effort to restore the articles that Steiner demanded Automattic remove from its site.

28

1    (Hotham Decl ¶¶ 6-7.)  Both Automattic and Hotham suffered reputational harm for having their

2    legitimate content illegitimately removed.  (Sieminski Decl. ¶¶ 13-15; Hotham Decl. ¶¶ 12-14.)

3        **B.    Timeline of Complaint, Service, and Default**

4        Plaintiffs filed this action on November 21, 2013.  (*See* Compl., Dkt. 1.)  Because Defendant

5    Steiner lives in the United Kingdom, Plaintiffs filed a motion on December 10, 2013 for an extension of

6    time to serve process, (*see* Mot. To Enlarge Time to Serve Foreign Defendant, Dkt. 10), which the Court

7    granted the next day (*see* Order Granting Pl.'s Mot., Dkt. 11).  Plaintiffs served Defendant Steiner on

8    December 23, 2013 in accordance with UK law.  (*See* Dkt. 14.)    Defendant's answer was due on

9    January 13, 2013.  *See* Fed. R. Civ. P. 12(a)(1)(A)(i).  However, Steiner has still never filed any

10   appearance or answered the Complaint.  The Clerk of this Court entered default against Steiner on May

11   20, 2014.  (*See* Dkt. 21.)

12   **II.    DEFAULT JUDGMENT**

13       Steiner abused the DMCA process in an effort to silence a reporter critical of his organization and

14   to force WordPress.com to remove legitimate content from its website.  Since then, Steiner failed to

15   appear in this Court to answer Plaintiffs' Complaint.  Plaintiffs therefore request that this Court enter a

16   default judgment of $5,000 for Hotham, $5,000 for Automattic, and an award of $14,520 in attorneys'

17   fees.  *See* Fed. R. Civ. P. 55(b)(2).

18       **A.    Rule 55**

19       After the Clerk of the Court enters a defendant's default, the Court takes the well-pleaded facts of

20   the Complaint as true.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).  Default

21   judgment is appropriate when the Clerk has entered Defendant's default and the facts of the well-pleaded

22   facts in the Complaint establish Defendant's liability.  *See Columbia Pictures Film Prod. Asia Ltd. v.*

23   *Uth*, 2007 WL 36283 (E.D. Cal. Jan. 4, 2007).

24       **B.    Liability**

25       The DMCA creates a cause of action against those who knowingly abuse the notice-and-

26   takedown procedure.  *See* 17 U.S.C. § 512(f) .  It states that "[a]ny person who knowingly materially

27   misrepresents under this section . . . that material or activity is infringing . . . shall be liable for any

28

damages, including costs and attorneys' fees, incurred by the alleged infringer . . . or by a service provider . . . ." *Id.*

The information in the press release that Hotham published on his blog did not infringe any copyright because Hotham had permission to publish it.  It was a press release, which by its very nature conveys the intent to "release" information to the "press."  It was on Straight Pride UK letterhead, bore the heading "Statement," and was signed by the Straight Pride Press Team."  (Compl. ¶¶ 27-28.) Furthermore, the file name was "Press Statement – Oliver Hotham.pdf," (Compl. ¶ 26), making explicit that Oliver Hotham, himself, had permission to publish the material.

Steiner knew that his statements to the contrary were false.  (Compl. ¶ 35.)  Hotham had identified himself as "a student and freelance journalist."  (Compl. ¶ 22.)  Steiner himself sent Hotham the press release.  (Compl. ¶ 26.)  Steiner thus made his misrepresentation knowingly.  (Compl. ¶ 35.)

Finally, the knowing misrepresentation was material because Automattic would not have disabled access to the post but for Steiner's misrepresentations.  (Compl. ¶ 36.)

## C.  *Eitel* Factors

The Ninth Circuit has set out a multi-factor test for determining whether to grant default judgment.  *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  The factors are:

1.  The possibility of prejudice to the plaintiff
2.  The merits of the Plaintiff's substantive claim
3.  The sufficiency of the Complaint
4.  The sum of money at stake in the action
5.  The possibility of a dispute concerning material facts
6.  Whether the default was due to excusable neglect
7.  The strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.*  In this case, the factors weigh heavily in favor of default judgment.

### 1.  Possibility of Prejudice to Plaintiffs

The possibility of prejudice to Plaintiffs is high.  In fact, it is almost certain.  If this Court does not grant Plaintiffs' motion for default judgment, Plaintiffs will have no means to recover for Defendant's fraud and misrepresentation outside of this action.  This weighs heavily in favor of default judgment.

### 2.     Merits of the Claim and Sufficiency of the Complaint

As discussed in Section II(B) above and set out in the Complaint, the merit in Plaintiffs' substantive claim is clear.  Steiner sent Automattic a "Digital Millennium Copyright Act - Removal Request" claiming that Hotham "did not have my permission to reproduce this content." (Compl. ¶¶ 31, 33.)  However, Steiner knew it was a misrepresentation to tell Automattic that Hotham did not have permission to publish the information in the press release.  (Compl. ¶¶ 34-35.)  Steiner himself had given Hotham permission by sending him the answers in a press release.  Thus, the second and third factors also weigh heavily in favor of default judgment.

### 3.     Amount of Money at Stake

In general, a large sum of money at stake is a factor disfavoring default judgment.  *See Eitel*, 782 F.2d at 1472.  The sum of money at stake in this case – $10,000 plus costs and attorneys' fees – is relatively modest.  Courts in the Ninth Circuit have found similarly small requests for damages to weigh in favor of entry of default judgment.  *See, e.g.*, *Family Tree Produce, Inc. v. Bautista*, 13-00364-DOC, 2013 WL 6733576, *4 (C.D. Cal. Dec. 13, 2013) (finding a request for $58,848.12 weighs in favor of entry of default judgment because it is "diminutive in comparison to the money at stake in both *Eitel* [$2.9 million] and *Church Bros.* [$212,259.21]." ).  In fact, Courts have held that requests substantially higher than the one requested here actually weighed in favor of default judgment because they were "relatively small." *See, e.g.*, *Geller v. World Tech.*, 5:11-CV-01732 EJD, 2011 WL 5825928 (N.D. Cal. Nov. 17, 2011) ($106,228.26); *Church Bros., LLC v. Garden of Eden Produce, LLC*, 11-CV-04114 EJD, 2012 WL 1155656, *3 (N.D. Cal. Apr. 5, 2012) ($212,259.21).  Therefore, this factor weighs in favor of default judgment.

### 4.     No Possibility of Disputed Facts

There little possibility of dispute over the material facts in this case.  Both Steiner's press release and his takedown notice misrepresenting copyright infringement are in writing.  These two documents alone establish liability.  Thus, this factor also weighs in favor of default judgment.

### 5.     No Possibility of Excusable Neglect

Defendant's default is not the result of excusable neglect.  Plaintiff served Steiner in accordance with the laws of the United Kingdom and England, yet he has not made any effort to appear in this Court.

1

### 6.        Policy Favoring Resolution on the Merits

2        Finally, resolution on the merits is impossible as Defendant has made no effort to appear in this

3    court or answer Plaintiffs' Complaint.  *See PepsiCo v. Cal. Sec. Cans.,* 238 F. Supp. 2d 1172, 1177 (C.D.

4    Cal. 2002).

5    **III.    JURISDICTION**

6        **A.        Subject Matter Jurisdiction**

7        Federal jurisdiction in this case is clear because Plaintiffs' cause of action is based on a federal

8    law: 17 U.S.C. § 512.  The Court can exercise subject matter jurisdiction over such a question of federal

9    law.  *See* 28 U.S.C. §§ 1331 and 1338.

10       **B.        Personal Jurisdiction**

11       There are two independently sufficient bases for Personal Jurisdiction: (1) consent by agreement

12   to the WordPress Terms of Service, and (2) specific jurisdiction arising out of minimum contacts with the

13   state of California.

14       **1.        Steiner Consented to Jurisdiction in California**

15       Steiner consented to this Court's jurisdiction when he agreed to the WordPress Terms of Service.

16   That agreement includes a California choice of law clause and a California venue selection clause.  (See

17   Gratz Decl., Ex. A.)  The terms of service state,

18              [T]his Agreement, any access to or use of the Website will be governed by
               the laws of the state of California, U.S.A., excluding its conflict of law
19              provisions, and the proper venue for any disputes arising out of or relating
               to any of the same will be the state and federal courts located in San
20              Francisco County, California.

21   (*Id.*)  Steiner's second and third purported notices show that Steiner was logged in as a WordPress.com

22   user and he could not have become a WordPress user without accepting the WordPress terms of service.

23   (*See* Gratz Decl., Ex. C, D; Sieminski Decl. ¶ 12.)

24       Accepting a forum selection clause is evidence of consent to personal jurisdiction in that forum.

25   *See SEC v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007); *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694

26   F. Supp. 2d 1039, 1052 (N.D. Cal. 2010).  Thus, by accepting the California forum selection clause in the

27   WordPress terms of service, Steiner has consented to personal jurisdiction in California.

28

1   Forum selection clauses are presumptively reasonable and the party disputing the validity of the

2   clause bears the burden of showing it is unenforceable.  *See Zenger-Miller, Inc. v. Training Team GmbH*,

3   757 F. Supp. 1062, 1069 (N.D. Cal. 1991).  When, as in this case, the defendant does not appear in Court

4   to carry that burden, the clause is enforceable and provides personal jurisdiction in the forum.  *See*

5   *Craigslist*, 694 F. Supp. 2d at 1052.

6       **2.**    **This Action Arises Out of Steiner's Specific Contacts with California**

7   Because, as noted above, Steiner consented to this Court's jurisdiction, the presence or absence of

8   minimum contacts with California does not affect the result.  However, as an independent basis for this

9   court's exercise of personal jurisdiction, those minimum contacts are present here.  The Ninth Circuit has

10  created a three-prong test for determining whether a case presents sufficient minimum contacts to justify

11  exerting personal jurisdiction over a foreign defendant.  *See Int'l Shoe Co. v. Washington*, 326 U.S. 310,

12  316 (1945); *Schwarzenegger v. Fred Marin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *see also Lake*

13  *v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987) (personal jurisdiction may arise out of a single transaction if

14  the action arises out of that transaction); *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir.

15  2002).  First, the defendant must purposefully avail himself of the privilege of conducting activities in the

16  forum through some act in the forum, thereby invoking the benefits and protections of its laws.

17  *Schwarzenegger*, 374 F.3d at 802 (quoting *Lake*, 817 F.2d 1421).  Second, the claim must arise out of the

18  defendant's actions in the forum.  *Id.*  Finally, exercise of jurisdiction must be reasonable.  *Id.*

19  California's long arm statute provides for personal jurisdiction to the full extent the Federal Constitution

20  allows.  *See* Cal. Civ.  Proc. Code § 410.10.  *See also Schwarzenegger*, 374 F.3d at 800-01.

21  Steiner's actions satisfy all three parts of the test.  First, he purposefully directed his takedown

22  notice to Automattic, a company based in California.  And, because copyright law does not apply

23  extraterritorially, *see Subafilms, Ltd. v. MGM-Pathe Comm. Co.*, 24 F.3d 1088, 1090 (9th Cir. 1994),

24  Steiner could not have been directing his actions towards the UK where both he and Hotham live; the

25  DMCA has no application there.  Instead, by invoking the protections of United States law, he could only

26  have been directing his actions towards the United States, and more specifically, California, where

27  Plaintiff Automattic operates.  Second, Plaintiffs' claim arises directly out of Steiner's action in

28  California, because the fraudulent takedown notice itself, submitted in California, violates 512(f).  Third,

1   exercising jurisdiction in this case is reasonable.  Defendant, a resident of the United Kingdom, reached

2   across national borders specifically to abuse United States law, which otherwise would not have

3   protected him.  It is certainly reasonable to hold him accountable under the very same section of the very

4   same law whose protections he voluntarily invoked.  Foreign defendants should not be allowed to reach

5   across national boundaries to abuse a US law without also being subject to the restrictions and

6   requirements of that very same law.  Steiner also perpetrated a fraud on Automattic in California.  He

7   cannot be heard to complain when Automattic seeks to vindicate its rights in California.

8        Defendants bear the burden to show that jurisdiction would be unreasonable.  *Schwarzenegger*,

9   374 F.3d at 802; *Doe*, 533 F. Supp. 2d at 1006.  Here, Steiner has not carried that burden because he has

10   not appeared.

11        Although one Court in the Northern District of California declined to exercise personal

12   jurisdiction over a foreign defendant in a 512(f) case where the only basis for jurisdiction was the

13   sending of a DMCA takedown notice to a recipient in California, that case placed particular emphasis on

14   two facts: (1) that no Plaintiff in the case resided in California, so the state had no interest in adjudicating

15   the claim, and (2) that there was pending litigation in another U.S. District Court where the foreign

16   defendant had consented to jurisdiction.  *See Doe v. Geller*, 533 F. Supp. 2d 996 (N.D. Cal. 2008).

17   *Geller* does not control this case, because Plaintiff Automattic resides in California and was damaged

18   here, and there is no other pending litigation in another district involving Steiner.

19        Therefore, it is reasonable to hale this foreign Defendant into this Court for his harm to

20   Automattic and its users.

21   **IV.    DAMAGES**

22        Section 512(f) states that a party making knowing misrepresentations in a DMCA takedown

23   notice is liable "for any damages including costs and attorneys' fees, incurred by the alleged infringer . . .

24   or by a service provider . . . ."  17 U.S.C. § 512(f) .  Although few courts have addressed the scope of

25   damages under this section, the plain language is very broad, allowing for "any damages," and

26   specifically states that costs and attorneys' fees are appropriate.  *Id.*  In this case, Plaintiffs have suffered

27   four categories of damages.  First, both Automattic and Hotham spent significant resources dealing with

28   Defendant's fraudulent takedown notice.  Second, both Plaintiffs have suffered reputational harm –

Hotham as a journalist wrongfully accused of copyright infringement, and Automattic as a service provider forced to take down its user's post on the basis of a misrepresentation. Third, Automattic has incurred costs and attorneys' fees pursuing this litigation to vindicate its right to post the article, which, to date, remains disabled. *See* Oliver Hotham, It's Great When You're Straight Yeah, *not available at* http://oliverhotham.wordpress.com/2013/08/03/its-great-when-youre-straight-yeah/ (last visited May 15, 2014). Fourth and finally, Hotham has suffered damages by Steiner's attempt to silence his viewpoint by abusing the DMCA process.

### A.    Hotham and Automattic Spent Time Dealing with Meritless Takedown Notices

Automattic received three separate takedown notices from Steiner. Steiner sent the first notice on August 3, 2013, the same day that Hotham posted his article. (*See* Sieminski Decl. ¶ 3; Gratz Decl., Ex. B.) Phil Crumm, an Automattic employee, reviewed and evaluated Steiner's takedown notice and responded on August 6, 2013 to inform him that Automattic had removed Hotham's post. (*Id.* ¶ 4) Crumm also corresponded with Hotham about the counter-notice process required to reinstate his article. (*See* Sieminski Decl. ¶ 5; Gratz Decl., Ex. B.) Steiner sent a second notice on August 12, 2013, which purported to be a DMCA takedown notice, but raised issues of UK harassment and criminal law. (*See* Sieminski Decl. ¶ 6; Gratz Decl., Ex. C.) Phil Crumm reviewed and evaluated Steiner's second notice and responded on August 13, 2013 that WordPress "is in no position to arbitrate content disputes or make legal judgments" and suggested that Steiner would have to file for a court order if he wished to pursue legal action against Hotham other than a DMCA takedown. (*Id.* ¶ 7) Two days later, on August 14, 2014, Steiner sent another purported DMCA takedown notice based on the same content as his second notice. (*See* Sieminski Decl. ¶ 8; Gratz Decl., Ex. D.) Again, Phil Crumm reviewed the notice, and in this case, determined that it did not comply with DMCA requirements because it did not state the content Steiner believed to be infringing. (*Id.* ¶ 9.)

Crumm spent a substantial amount of time evaluating Steiner's meritless takedown notices and corresponding with both Hotham and Steiner. Other Automattic employees have spent time responding to press inquiries about its response to this meritless takedown notice. (*See* Sieminski Decl. ¶ 10.)

For his part, Mr. Hotham spent a substantial amount of time reviewing the takedown notices, researching potential legal options, and responding to Automattic's emails. (*See* Hotham Decl. ¶¶ 6-7.)

1

### B.      Hotham and Automattic Suffered Loss of Reputation

2      Hotham is a student journalist, still crafting and building his journalistic reputation.  The media

3 industry takes accusations of plagiarism and copyright infringement very seriously, and the controversy

4 Steiner caused with his knowingly false statements harmed Hotham's reputation.  Hotham's article

5 remains down today pending resolution of this litigation, *see* Oliver Hotham, It's Great When You're

6 Straight Yeah, *not available at* http://oliverhotham.wordpress.com/2013/08/03/its-great-when-youre-

7 straight-yeah/ (last visited May 15, 2014), casting an inappropriate and undeserved shadow over his

8 reputation for journalistic integrity.

9      Automattic operates WordPress.com in an effort to empower a community of bloggers.

10 Automattic is proud that the WordPress source code, which underlies WordPress.com, is not strictly

11 controlled by Automattic, but is open source and available for anyone to work on, change or contribute

12 to.  (*See* Sieminski Decl. ¶ 13.)  WordPress prides itself on its reputation for allowing its users to use

13 WordPress.com for any lawful purpose they choose.  (*See* Sieminski Decl. ¶ 14.)  Steiner's fraudulent

14 takedown notice forced WordPress to take down Hotham's post under threat of losing the protection of

15 the DMCA safe harbor.  Steiner did not do this to protect any legitimate intellectual property interest, but

16 in an attempt to censor Hotham's lawful expression critical of Straight Pride UK.  He forced WordPress

17 to delete perfectly lawful content from its website.  As a result, WordPress has suffered damage to its

18 reputation.

19      ### C.      Automattic Incurred Attorneys' Fees in Pursuing This Litigation

20      The statute specifically provides for attorneys' fees.  In this case, in order to avoid substantial

21 damage to its reputation as an impartial host and service provider of online blog and website hosting that

22 does not censor its users content, WordPress was forced to pursue this litigation, which it would not have

23 done absent these fraudulent takedown notices.  To date, Automattic has incurred $14,520 in attorneys'

24 fees. (*See* Gratz Decl. ¶ 8.)

25      Although one case in the Northern District of California has held that attorneys' fees accrued

26 during a 512(f)  litigation are not recoverable, *see Lenz v. Universal Music Corp.*, 07-cv-03783, 2010 WL

27 702466, at *11 (N.D. Cal. Feb. 25, 2010), that decision runs contrary to the plain language of the statute,

28 which clearly states that a person who makes a knowing material misstatement in a DMCA takedown

1  notice is liable "for *any* damages *including costs and attorneys' fees*, incurred by the alleged infringer . . .

2  or by a service provider . . . ."  17 U.S.C. § 512(f) (emphasis added).  *Lenz* is the subject of a pending

3  appeal, and one of the issues on appeal is the scope of damages available under 512(f).  (*See* Joint

4  Stipulation and Order, *Lenz v. Universal Music Corp.*, dated March 1, 2013, Dkt. 461.)

5          The decision in *Lenz* also conflicts with well-settled canons of statutory construction.  That Court

6  based its decision on the notion that awarding attorneys' fees in a 512(f) action would conflict with 17

7  U.S.C. § 505, which states "[i]n any civil action under this title, the court in its discretion . . . may also

8  award a reasonable attorneys' fee to the prevailing party . . . ."  However, the U.S. Supreme Court has

9  frequently stated that when a statute contains both a general provision and a more specific provision

10 applicable to the case, the more specific provision controls.  *See Bloate v. U.S.*, 559 U.S. 196, 207 (2010)

11 ("[a] specific provision" . . . "controls one[s] of more general application") (brackets in original); *Nat'l*

12 *Cable & Telecomm'ns Ass'n, Inc. v. Gulf Power Co.*, 534 U.S. 327, 335-36 (2002) ("It is true that

13 specific statutory language should control more general language when there is a conflict between the

14 two."); *AT&T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 410 (1999) ("Where there is no clear intention

15 otherwise, a specific statute will not be controlled or nullified by a general one."); *Crawford Fitting Co.*

16 *v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) (same).  Section 505 applies generally to "any civil

17 action."  Section 512(f)  applies specifically to actions for misrepresentations in DMCA takedown

18 notices.  Well-settled Supreme Court law requires that a Court resolve any conflict – to the extent one

19 exists – in favor of the more specific provision in 512(f), and award attorneys' fees.

20          **D.      Steiner's Actions Chilled Hotham's Speech**

21          The DMCA provides individuals with the power to force large, substantial service providers such

22 as WordPress and YouTube to remove content based only on their say-so.  A service provider can only

23 invoke the DMCA safe harbor if it complies with the notice-and-takedown process, in which it cannot

24 exercise its own judgment as to the validity of a takedown notice, but must rely on the counter-

25 notification procedure for the alleged infringer to rectify meritless notices. 17 U.S.C. §§ 512(a), (g).

26 Thus, by invoking the DMCA, an individual threatens a service provider with overwhelming and

27 crippling copyright liability if the service provider refuses to take down the conduct the individual claims

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ENTRY OF
DEFAULT JUDGMENT AGAINST NICK STEINER / CASE NO. 3:13-CV-5413-JCS

to be infringing.  This creates extraordinary potential for abuse, which Congress addressed by creating a cause of action for damages when an individual abuses the system.

In this case, Defendant's statements were demonstrably and knowingly false.  This Court should not allow a Defendant to abuse the DMCA process to impose content- and viewpoint-based speech restrictions on others without facing the liability that Congress specifically imposed for doing so fraudulently.

Although, one Court in the Northern District of California has held that damages for chilled speech are not available in a 512(f)  action, *see Lenz v. Universal Music Corp.*, 07-cv-03783, 2013 WL 271673, at *8-9 (N.D. Cal. Jan. 24, 2013), the Court in *Lenz* based its decision on facts not present in this case.  For instance, in *Lenz*, the plaintiff stated that she "did not care that YouTube declined to host her video."  *Id.*  By contrast, Hotham has been deeply upset that his article was taken down and continues to stay down pending this litigation, and the situation has affected his decision making process for writing and posting articles since.  (*See* Hotham Decl. ¶¶ 10-11.)  *Lenz* is the subject of a pending appeal, and one of the issues on appeal is the scope of damages available under 512(f).  (*See* Joint Stipulation and Order, *Lenz v. Universal Music Corp.*, dated March 1, 2013, Dkt. 461.)

Hotham estimates that his damages in lost time, harmed reputation, and chilled speech amount to $5,000.  Automattic estimates that its damages in lost time and harmed reputation also amount to $5,000.

## V.   CONCLUSION

For the reasons described above, the Court should enter a default judgment of $5,000 for Hotham, $5,000 for Automattic, and an award of $14,520 in attorneys' fees.


Dated:  May 22, 2014                                    DURIE TANGRI LLP


                                                       By:  _____*/s/ Joseph C. Gratz*_____
                                                              JOSEPH C. GRATZ

                                                       Attorney for Plaintiffs
                                                       Automattic Inc. and
                                                       Oliver Hotham