DURIE TANGRI LLP
JOSEPH C. GRATZ (SBN 240676)
jgratz@durietangri.com
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: 415-362-6666
Facsimile: 415-236-6300

Attorney for Plaintiffs
Automattic Inc. and
Oliver Hotham

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AUTOMATTIC INC. and OLIVER HOTHAM, <br><br> Plaintiffs, <br><br> v. <br><br> NICK STEINER, <br><br> Defendant.. | Case No. 3:13-cv-5413-JCS <br><br> **SUPPLEMENTAL DECLARATION OF PAUL SIEMINSKI IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT NICK STEINER** <br><br> Date: October 3, 2014 <br> Time: 9:30 am <br> Ctrm: G - 15th Floor <br> Judge: Honorable Joseph C. Spero <br><br> **PUBLIC REDACTED VERSION** |

I, Paul Sieminski, declare as follows:

1. I am General Counsel at Automattic, Inc. Automattic, Inc. operates the blogging and publishing platform WordPress.com. I make this Declaration from personal knowledge, and if called to testify, I could and would testify competently thereto.

2. As stated in my previous Declaration in this matter, Automatic received three separate takedown notices from Defendant Nick Steiner:

    a. One on August 3, 2013, identifying Oliver Hotham's blog post and declaring that the post contained copyright infringing content;

    b. One on August 12, 2013, which purported to be a Digital Millennium Copyright Act ("DMCA") takedown notice, but raised issues of UK harassment and criminal law; and

    c. One on August 14, 2014, based on the same content as Steiner's second notice.

3. Around the same time, in compliance with DMCA law, Automattic disabled access to Hotham's blog post.

4. Following the takedown, numerous news sources published stories regarding the takedown—including tech news sources, legal news sources, GLBT news sources, and the mainstream media—which sharply criticized WordPress.com and Automattic.

5. Exhibits A-Q are true and correct copies of press articles from *The Guardian, Tech Crunch, Boing Boing,* and other journalists including Oliver Hotham himself, which cast WordPress.com in a negative light as a result of Defendants' abuse of DMCA law.

6. I can estimate the value of the damage from lost employee time that was caused by Defendant's fraudulent takedown notice by calculating the proportion of the employees' annual salaries commensurate with the proportion of their annual time spent on these issues.

7. The Automattic legal team has two members: me and Jenny Zhu. Phil Crumm, one of Automattic's support engineers also spent time dealing with Steiner's fraudulent notice, and is the person who actually corresponded with Oliver Hotham and Nick Steiner.

8. After receiving Steiner's fraudulent notices, I spent approximately 10 hours reviewing the DMCA process and submissions, and dealing with the press about the situation.

9. My full time salary as General Counsel for Automattic is ▇▇▇▇▇ per year.

1    10.    Therefore, I estimate Automattic's damage as a result of the loss of my time at ▮
2 (based on a standard, 2,000 hour year).

3    11.    Jenny Zhu spent approximately 6 hours reviewing the DMCA process and submissions,
4 and dealing with the press about the situation.

5    12.    Ms. Zhu's salary as a full time in-house attorney for Automattic is ▮ per year.

6    13.    Therefore, I estimate Automattic's damage as a result of the loss of Ms. Zhu's time at
7 ▮ (based on a standard, 2,000 hour year).

8    14.    Phil Crumm spent approximately 6 hours responding to the fraudulent takedown notice
9 and corresponding with Oliver Hotham and Nick Steiner.

10    15.    Mr. Crumm's salary as a full time support engineer for Automattic is ▮ per year.

11    16.    Therefore, I estimate Automattic's damage as a result of the loss or Mr. Crumm's time at
12 ▮ (based on a standard 2,000 hour year).

13    17.    In addition to the legal issues, research, and time Automatic employees expended on this
14 meritless DMCA notice, our outside PR firm, Brew Media Relations, spent substantial time responding
15 to the press coverage of the takedown.

16    18.    I can estimate the value of the damage to Automattic in terms of the value of time Brew
17 spent on this issue by calculating the proportion of our payment to Brew commensurate with the
18 proportion of its time spent on this issue.

19    19.    Automattic does not pay Brew on an hourly basis.  Instead, Automattic pays a monthly
20 retainer of ▮.

21    20.    Brew assigned 2-3 people to work on the issue of the fraudulent takedown and press
22 response in the days following the takedown and subsequent news articles.  Together, these individuals
23 spent approximately 5 hours.

24    21.    Brew spends about 20 hours a month on issues for Automattic.

25    22.    Therefore, I estimate Automattic's damage as a result of the costs of Brew's time at
26 ▮.

27    23.    Also as a result of Steiner's meritless takedown notice, which forced Automatic to
28 remove perfectly lawful content from its website under threat of losing DMCA safe harbor protection,

Automattic has suffered damage to its reputation for allowing its users to use WordPress.com for any lawful purpose.

24. Automattic prides itself on its reputation for allowing its users to use WordPress.com for any lawful purpose they choose. It also works hard to advance and uphold its reputation as defenders of free speech online.

25. The criticism from the press following Steiner's fraudulent takedown notice substantially undermined Automattic's reputation. The article from Boing Boing—which has a vast readership that significantly overlaps with WordPress.com's users—was particularly damaging. It stated, "Afterwards, they [Straight Pride UK] changed their mind about the interview and sent a fraudulent DMCA takedown notice to WordPress.com, the blogger's host. WordPress — who should have seen that there was no possible copyright violation in the interview — caved and cooperated in censoring the post." *See* Exhibit A.

26. That damaged reputation, turns away users who might otherwise have decided to use our products and services and therefore also affect Automattic's ability to monetize that use.

27. I estimate the damage to Automattic's reputation from these articles at $2,000.

28. Therefore, in total, I estimate my damages to be as follows:

| Damage | Value |
|---|---|
| Loss of Mr. Sieminski's time | ▮ |
| Loss of Ms. Zhu's time | ▮ |
| Loss of Mr. Crumm's time | ▮ |
| Cost of Brew Media Relations | ▮ |
| Reputational harm | $2,000 |
| **TOTAL:** | **$8,860** |

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 25, 2014 in San Francisco, California.

*Paul Sieminski* (DocuSigned, D9671DA172AD49E...)
SIEMINSKI